7L 635
16L 357

## R. I. WILSON *et al. v.* R. J. SCRUGGS.

1. CHANCERY PLEADINGS AND PRACTICE. *Plea in abatement. Appearance and defense.* Appearance and defense on the merits, by a defendant in chancery, after his plea in abatement, that the subpœna to answer had been executed upon him while serving as a juror, has been over-ruled as insufficient, waive the plea. If the defendant wishes to have the opinion of the supreme court on the sufficiency of such a plea, he must abide by it, and decline to plead over.

2. LEASE. *Tenant. Improvements.* A tenant cannot claim compensation for improvements made pending the lease, unless he have a contract with his landlord to that effect.

3. IMPROVEMENTS. *Rents.* Under the Code, secs. 3259, 3261, which allows a *bona fide* occupant of land under color of title, compensation for improvements not exceeding the rents, in the absence of an independent equity controlling legal rights, only such improvements are allowed for as were made before the party had knowledge of the better title.

### FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

CORNICK & CORNICK for complainants.

A. S. PROSSER for defendant.

COOPER, J., delivered the opinion of the court.

This bill was filed on the 29th of August, 1877, to remove a cloud from the title of land, and to recover possession of the land. Executions against one John M. Davis were issued on the 25th of April,

1874, and levied upon the land in controversy on the same day. At the sale made under these levies, on September 12, 1874, the complainants, or those under whom they claim, became the purchasers, and received the sheriff's deed on the 30th of November, 1874. On the 29th of January, 1875, they brought their action of ejectment at law against the defendant for the land, which suit was compromised and dismissed, the defendant taking from them a lease of the land for the year 1877, on the 10th of January of that year. Immediately after accepting this lease, the defendant caused to be proved and registered a deed from John M. Davis to himself for the land, bearing date the 18th of August, 1870, and set up a claim to the land. Thereupon this bill was filed.

On the first day of the term of the chancery court to which the writ of subpœna for the defendant was returned, the defendant filed a plea in abatement in substance that at the time of the service of the subpœna to answer, to-wit, on the 3d of September, 1877, this defendant was in attendance on the criminal court for the county of Knox, then open and holding its regular September term, as a regular juror, duly summoned to attend the court during the term. The plea was to the whole bill, and demanded the judgment of the court whether the suit ought not to be abated. The complainants set the plea for hearing on its sufficiency, and the chancellor overruled it as insufficient. The defendant then answered the bill, and filed his answer as a cross-bill. The cross-bill was dismissed, on motion, for want of equity. Such pro-

ceedings were had in the original cause, that a final hearing was had on its merits, and the chancellor rendered a decree in favor of the complainants, removing the cloud upon their title by reason of the deed of Davis to Scruggs, and ordering that they be put in possession of the land. The chancellor also made a reference to the master to take an account of the rents of the land from the 30th of November, 1874, the date of the sheriff's deed, and of the taxes paid by the defendant, and the permanent improvements placed on the premises by the defendant not exceeding the rents. The master made a report of the balance of rent due, after deducting taxes, and then found generally that the defendant "had covered the barn, built a crib, cut a ditch through the meadow, and put out a great many fruit trees," and that these improvements were worth to the farm the amount of rents. The chancellor confirmed the report, overruling exceptions. The defendant alone appealed.

The principal ground relied upon by the appellant for a reversal is in the chancellor's ruling on the plea in abatement. It is earnestly and ably argued that the plea is good under the provisions of the Code, sec. 2902, sub-sec. 2, and sec. 4008. But, in the attitude in which the case comes before us, a preliminary question presents itself. The defendant, when his plea was overruled upon its sufficiency, instead of abiding by it, elected to appear and make defense on the merits. The general rule is conceded that an appearance waives a plea in abatement. Such an appearance at any time before the plea is disposed of,

as by filing a plea in bar, would waive the dilatory
defense: *Douglass* v. *Belcher*, 7 Yer., 105.   Does the
fact that the plea in abatement has been overruled,
change the effect of appearance and defense?   No
reason occurs why it should.   Why may the defend-
ant not waive the plea after it has been decided to
be insufficient, as he may do. after issue is taken upon
it?   In either case, he chooses to try on the merits.
And he can no more, in the one case than in the other,
expect the court, after he has voluntarily submitted to
its jurisdiction and had all that he was justly entitled
to, a full trial, to take any further notice of a mere
plea for delay.   He cannot have both a trial and
delay.   The law does not favor the plea to that ex-
tent.   If he wishes to have the judgment of this
court upon the sufficiency of his plea, he must abide
by it, and decline to plead over.   That has been held
to be the proper mode of accomplishing the object:
*Boon* v. *Rahl*, 1 Heis., 15.   Any other ruling would
give the defendant the benefit, in the contingency which
has happened in this case, of both the plea in abate-
ment and a plea in bar, which he is not entitled to.
He could not have had both if the plea had been
held sufficient.   For, if the plea be found untrue, the
complainant takes his decree on the merits.   By the
Code, sec. 4393, it is provided that if a plea in chan-
cery be found false, the complainant shall have the
same advantages as if it had been so found by a
verdict at common law.   And after a verdict at com-
mon law upon the truth of a plea in abatement, where
the issue is to the country, there is no *respondeat*

Wilson *v.* Scruggs.

*ouster: Straus* v. *Weil,* 5 Cold., 126; *Bacon* v. *Parker,*
2 Tenn., 55.    The opinion to the contrary in *Ken-
drick* v. *Davis,* 3 Cold., 524, was inadvertently deliv-
ered by overlooking the distinction between overruling
a plea on its sufficiency, and finding the falsity of the
plea on the trial of the issue joined upon it: Hicks'
Man., sec. 78 *b; Searight* v. *Payne,* 1 Tenn. Ch., 190;
*Robb* v. *Parker,* 4 Heis., 58, 70.

There are cases in our reports in which this court
has given the defendant the benefit of a plea in abate-
ment, erroneously overruled, after a trial on the merits.
In two of these cases, the plea was to the jurisdiction
of the court, not a plea of a mere personal privilege:
*Chambers* v. *Haley,* Peck, 159; *Klepper* v. *Powell,* 6
Heis., 503.    The first of these cases was an attach-
ment of property at law issued by a justice in a wrong
county, and the decision was rested on a case never
reported, without giving any reason.    The second of
these cases was an attachment of property, but in the
court of chancery.    The decision was principally rested
on a provision of the Code, sec. 4395, which seems
to have been intended to prevent a resort to two
dilatory defenses, rather than to confer a privilege.
The case of *Martin* v. *Ramsey,* 7 Hum., 260, is, how-
ever, strictly analogous to the case before us.    The
suit was in chancery, and the plea that a subpœna to
answer was served upon the defendant when attending
court as a witness.    The report is probably defective.
For, as the facts now appear, this court is made to
dismiss the bill upon holding the plea good when set
for hearing on its sufficiency, which, of course, could

never have been done. It is more likely that issue was taken on the plea below, and the error of the court below was in finding that it was not sustained by the proof. But even in this view, the effect of the finding would have been final under the act of 1801, ch. 6, sec. 26, brought into the Code sec. 4393. The decision is not satisfactory in any aspect.

The correctness of the chancellor's decree upon the merits is not seriously impugned, and is unquestionably correct so far as it gives the complainants relief. The title of the complainants was superior to that of the defendant under his unregistered deed, as the defendant conceded by accepting a lease under it.

There was error, however, in the decrees below in ordering a general account in favor of the defendant for improvements, and in allowing for improvements after the defendant had notice of the superior title of complainants, and especially after the agreement of lease. Most of the improvements were made after the defendant had become a lessee, and all of them perhaps after he had notice of the complainants' title. The lease was in writing, and contained no stipulation that the lessee might make improvements at the expense of the lessors. Unless there is a special agreement to this effect between the parties, the tenant cannot claim compensation from his landlord for improvements or repairs: Taylor L. & T., sec. 553; *Kutter* v. *Smith*, 2 Wall., 491; 6 Cow., 475. The Code, secs. 3259, 3261, allows a *bona fide* occupant of land, under color of adverse title, compensation for permanent improvements to the extent that they enhance the value of the land

not exceeding the rents and profits.   But the construction put by the courts upon the statutes, brought into the Code in these sections, is that, in the absence of any independent equity controlling the legal rights, they only allow for improvements made before the party had knowledge of the better title, for the obvious reason that after notice the party ceases to be a *bona fide* occupant:  *McKinly* v. *Holliday*, 10 Yer., 477. And this is the rule of equity, where the owner of the land is seeking active relief: 2 Sto. Eq. Jur., 799 *a; Putnam* v. *Ritchie*, 6 Paige, 390, 405; *Green* v. *Biddle*, 8 Wheat., 1.   The defendant, in his deposition, shows that he knew of the sale under which complainants claim when it was made, and the summons in the action of ejectment was served upon the defendant on the 22d of January, 1875.   The improvements were probably all made after the latter date, and subsequent to the execution sale.

The complainants have not appealed, but the general appeal of the defendant brings up for review the decree adjudging the rights of the parties, and settling the priciples on which the reference was made as to the improvements: *Carnes* v. *Polk*, 5 Heis., 245.

The decree will be affirmed on the merits, and reversed as to the matters of account, and a new reference made upon the principles of this opinion. The complainants may take a decree for the immediate possession of the land.   The defendant will pay all costs.

FREEMAN, J., delivered the following dissenting opinion:

I am unable to agree with the opinion of the majority of the court, and state as briefly as I can the reasons for my dissent.

Conceding the matter of the plea in abatement to be good, which I do not discuss, the question is, whether, when a party pleads a plea in abatement of this character, asserting a personal privilege, and the court erroneously holds, as a matter of law, his plea insufficient, and the party then answers, by leave of the court, or in the exercise of his legal right to do so, and the case is heard on proof, and a final decree had, from which respondent has appealed to this court, this error in overruling his plea can be reviewed, and the error corrected. In other words, whether the party is compelled by our law to let judgment or decree go against him on the main matter of controversy, and then appeal and stand alone on his plea, or else lose the right to have the error of the court corrected by this court, if error there be.

I think the provisions of our Code, taken from the act of 1801, as to chancery practice, are conclusive of this question. By sec. 4393: "If the plaintiff conceives any plea or demurrer to be naught, either for the matter or the manner of it, he may set it down with the clerk to be argued; or, if he thinks the plea good but not true, he may take issue upon it and proceed to trial. If the plea be found false, the complainant shall have the same advantages as if it had been so found by verdict at common law."

By sec. 4395, it is provided: "Upon plea or *demurrer* argued and overruled, no other plea or demurrer shall be received, but the defendant *shall* answer the allegations of the bill."

These provisions in terms plainly include all pleas in a court of chancery, and define clearly the right of a respondent in such a case, where either a *plea* or *demurrer* is overruled, to answer, and, as a matter of course, to proceed to a regular hearing on said answer by proof, to a final decree. I remark, first, that no appeal will lie from the decree overruling a plea. The party is compelled to wait for a final decree, either by *pro confesso* against him without answer, in which case the charges of the bill will be decreed on as admitted, or he answers, takes proof and has final decree in that way, and then appeals.

The theory of the majority opinion is, that in a case of plea in abatement like the present, if he gets a review of the action of the lower court on his plea, he must let a decree on order *pro confesso* be had against him, making no defense to the charges against him in the bill, and thus, after final decree, stand alone on his plea, and invoke the action of this court at last by an appeal from the final decree.

To this I cannot assent, either upon authority or sound principle. The law has given him the right to interpose the matter of the plea, if it be good, in abatement of the particular suit. It has imposed no forfeiture of other rights as a penalty for the enjoyment of this one. For the court to do so, as I think, is to add to the law, not construe it.

The theory of the majority rests on the idea, that if the chancellor erroneously decides against his right on the plea, he must lose *that* right, and that error be final against him, unless he will forfeit his right to answer the charges of the bill, and to contest the claim against him on the proof. He is placed in this dilemma in many cases, and theoretically in all, that if I contest the charges of the bill, I must waive and abandon my legal right to plead a legal defense to the suit then commenced. If the party stands on his plea, then he must allow decree as on confession to all the claims made in the bill. Practically this enables the chancellor in all cases to overrule such pleas. with impunity and at his will, and there is no redress. Certainly such was not intended to be the result of allowing such a plea to be filed. To give a legal right in plain terms, and then by construction to hold that if exercised and the benefit of it had, it shall be on pain of allowing a final judgment or decree against the party, it may be on an unjust claim, is a view I am unable to assent to.

This theory, it seems to me, is in the face of the sections of the Code cited, and irreconcilable with the long-settled practice under them. They place the rights of a party in such cases, on a demurrer overruled, on precisely the same ground as in case a plea is overruled; that is, in either case he shall answer, and the case proceeds regularly to a hearing on the issues thus made. No one, I take it, will maintain that when a demurrer is overruled, the filing of an answer, and proceeding to a hearing on

the issues made, precludes the party from insisting on the benefit of his demurrer on appeal from the final decree. If the language of the sections means anything, however, it does give the same right to answer in the one case as in the other—and why not the same consequences? The only way in which the result can be escaped, as I think, is by judicially inserting in the section an exception as to cases of pleas in abatement of this character overruled.

I think the plain meaning of the section is, that the party being allowed to answer, he is thereby allowed to proceed to hearing on the issue made, and loses no right thereby whatever. As he could not appeal from the action of the court in overruling his plea, he is compelled to wait till a final decree for this, and being so compelled, when his right accrues by law, this court is bound to review the whole record, try the case, as in all chancery cases we are required to do, de novo, and render such decree as the court below should have rendered. In this court, by sec. 3155 of the Code, he is entitled to have a re-examination of the whole matter of law and fact appearing in the record, in cases appealed from the chancery court.

This section giving the appeal, with the other requirement, that an appeal can only be had from a final decree (except in specified cases, of which this is not one), necessarily involves the review of all questions of law and fact, as the language of the section provides, and I am unable to find any principle on which this court can make an exception, without ex-

ercising the functions of the Legislature.    The theory
of the opposite view is, that this court re-examines
on such appeal the whole case, except the action of
the chancellor in overruling a plea in abatement; this
cannot be done, unless the party has suffered a decree
*pro confesso* to be had against him.    On this condi-
tion he may, by appeal from a final decree, have this
error corrected, but only on this condition.    To this
I am unable to assent.

It is urged that a party ought not to be allowed
to have a reversal of a decree after he has had a
hearing on the merits of his case.    As a general rule
this may be true, but if the Legislature has given
him by law an exemption from *that* suit at the time
commenced, it was a legal wrong to deprive him of
that right, and, in my judgment, this court ought not
to adopt, by construction, a rule that will defeat a
right given by the Legislature.    If the law is wrong,
as I think it is in this particular case, let it be re-
pealed by the body authorized to do so, not defeated
by construction.

The law has been uniformly held in accord with
the view herein expressed, as I think, by this court,
and the principle of the rule found in our cases from
1823, and before that, down to the present time.
The case of *Chambers* v. *Haley & Edington,* Peck,
159 (1823), though a case at law, goes on this ground.
The head note in Cooper's edition of that case is
as follows: "When a plea in abatement has been
overruled on demurrer, or stricken out, it is no waiver
of the benefit of that plea, to plead to the merits.

Therefore, where judgment goes against the defendant upon his plea to the merits, the supreme court, on appeal in error, will re-examine the whole case, and if satisfied that there is error, will reverse and remand, with directions to reinstate the plea in abatement and proceed thereon." A previous case of *Moore* v. *Smith* is cited for the ruling in this case by the court in its opinion.

In *Martin* v. *Ramsey*, 7 Hum., 260, a plea in abatement to a suit in chancery precisely as in this case, except the matter was that a party had been summoned as a witness in violation of the statute, the plea was disallowed by the chancellor, the defendant answered, and a decree on the issues made was had in favor of complainant. That was this case. The head note in that case is that: " It is a good plea in abatement to a bill in chancery, that the process was served while the party was attending court as a witness." And the opinion shows the decree of the chancellor was reversed, and the bill actually dismissed, the latter probably an oversight, as the decree should have been reversed and the court below directed to proceed on the plea in abatement.

The same principle was holden in the case of *Klepper* v. *Powell*, 6 Heis., 505, though that was not a case of plea of a personal privilege, as this is, but one that went not to defeat the right, but the jurisdiction of the court over the person by reason of attachment of the property, or the right to bring the party into court by the attachment of his property.

In view of this long line of unbroken decision, as

well as the provisions of our statute law, I think no hardship we may find in this particular case should drive us to making a precedent that shall overturn the settled practice and recognized rule of law on this subject for the last sixty years at least.

It is argued that we can only reverse on the merits in this court. I reply, this is merits in the sense of our law. The plea went to defeat this suit—was fatal to it if true.

But this difficulty presents itself on the other view, as effectually as in the view I have taken. If the party is compelled to have a decree *pro confesso* against him, and appeal from the final decree at last, thus standing on his plea, in the language of my brother Cooper's opinion, then the question will no more be merits on that appeal than now, and so the question could no more be considered then than it can after an answer and a final decree. How it is not "merits" now, but would be then, is not perceived.

We can see how the view taken by the majority works practically to repeal the section of the Code giving the exemption from suit while attending court. The suit against the party may be, in part or whole, unfounded, but he must allow a judgment *pro confesso* for all, if he pleads his privilege as to this wrongful service of process. So that he must imperil his right on the merits, or yield the one the law gives him, to plead in abatement. As a matter of course he will never plead it, and so the statute is a dead letter—effectually repealed by this court.

Why we should make an exception to the rule,

that an appeal in chancery cases brings up for review the entire proceedings, as against a plea in abatement, I am unable to see. It might be a good practice, but is not the law, as I understand it. I am not willing to so enact, as I think that is for the Legislature, not this court.

For these reasons, I dissent from the opinion of the majority of the court.

TURNEY, J., delivered the following dissenting opinion:

I concur in the reasoning of Judge Freeman, but do not think the question discussed in his or the majority opinion arises in this case, as I hold the plea to be fatally defective in substance. It does not aver that the defendant was prevented, by the fact that he was a juror, from appearing to defend the bill. The purpose of the law in giving the right to the abatement in such cases, was to avoid a conflict between a public duty and a private interest; that conflict is not shown here. Several weeks intervened between the service of the summons and the time at which by law the defendant was required to appear and defend the suit in chancery. While I think the result reached by the majority is the right one, I dissent to the grounds upon which it is based, not regarding the plea in abatement as in law good, for the reason indicated.

J. H. GAUT, Spl. Judge, upon rehearing, delivered the following opinion:

This cause has been heard at the present term, and an opinion of the court announced, and the cause has been reheard. The bill was filed 29th of June, 1877, and the subpœna to answer was served on defendant on the 3d of September, 1877, notifying him to appear and answer the bill at the next ensuing term, to meet on the 3d Monday of September, 1877. On the first day of the next term, 1877, of the chancery court at Knoxville, being the return term of the subpœna to answer, the defendant filed a plea in abatement, in which he, in substance, averred that at the time of the service of the subpœna to answer on him, he was in attendance on the criminal court for the county of Knox, then open and holding its regular September term, as a regular juror, duly summoned as such, to attend the court during that term. The plea was to the whole bill, and prayed the judgment of the court whether or not the suit should be abated and the bill dismissed.

The complainants set the plea down for hearing on its sufficiency in law, and the chancellor held it insufficient and overruled it. The defendant then moved the court for leave to file an answer to the bill, which was granted, and defendant filed his answer as a cross-bill. The cross-bill was dismissed on motion for want. of equity. The cause then progressed to a final hearing on its merits, and the chancellor rendered a decree removing the cloud sought to be removed by the

bill from the title to the land, and decreed the possession of the land to complainants, and adjudged the rights and equities of the parties. The defendant appealed.

The principal ground of reversal insisted upon by defendant's counsel is, that the chancellor erred in overruling the defendant's plea in abatement. They most strenuously insist that defendant's plea was a valid defense under secs. 2902, sub-sec, 2, and 4008 of the Code. From a careful review of all the authorities relied upon, we are satisfied that the position assumed, in the aspect of this case, is untenable.

If the defendant desired to rest his defense on his plea, and desired the action of this court upon it, he should not have plead his plea in bar to the merits of the case. In other words, when the defendant appealed and filed his answer, he waived his remedy and defense by his plea in abatement, and submitted to the jurisdiction of the court and got all he was entitled to—a fair trial of his cause on its merits. By this means the ends of justice were attained. Any other view of the case would have the effect to produce long delay in the settlement of the rights of litigants.

The defendant cannot waive his defense under his plea, and submit to the jurisdiction of the court, and have a fair trial on the merits, and if it result unfavorable to him, abandon his plea in bar, and again rely on his plea in abatement. If he desires the judgment of this court on the sufficiency of his plea, he must abide by it and decline to plead over.

The result is, that we adhere to the opinion heretofore announced at this term, and dismiss defendant's petition to rehear, and a decree will be drawn accordingly.