Fisher *v.* Edington.

12L 189
13L 589
1pi 24

JOHN D. FISHER *et al. v.* R. H. EDINGTON *et al.*

1. LIFE ESTATE. *Surrender. What is.* Surrender is the yielding up of an estate for life to him who has an immediate estate in reversion or remainder, by which the lesser estate is merged in the greater by mutual agreement.

2. IMPROVEMENTS. *Extent of.* Purchasers of a life estate, holding possession in good faith, under color of title, are entitled to compensation for permanent improvements, at the time of surrender, to the extent of the enhanced value of the lands at that date.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

JAMES COMFORT for complainants.

E. T. HALL, WEBB & McCLUNG, GEO. WASHINGTON and HENDERSON & JOUROLMON for defendants.

TURNEY, J., delivered the opinion of the court.

This ejectment bill was filed June 18, 1879, to recover about 59 acres of land in Knox county. The land had been in the continuous possession (uninter--

rupted) of the defendants, and those under whom they claim, since November 21, 1840. On parts of it there are dwelling houses built by defendants as well as other improvements.

The facts are: On June 26, 1810, the State granted to John DeArmond about 466 acres of land, including the 59 acres sued for. John DeArmond died in 1833, testate, leaving eight children, of them Matilda Perry, wife of Allen Perry.

In his will the testator undertook to divide the tract of land among his eight children and his wife. The seventh clause is as follows: "I give and bequeath to my daughters, Ellen DeArmond and Matilda Perry, 120 acres, beginning at the corner of my wife, Ellen's, land, on the river, running with her upper line to the back line above where Perry lives on the ridge, and then towards Knoxville, so far as a line to the river will include Perry's house and improvements, and then down the river back to the beginning, to be divided between them equally according to value."

Matilda Perry died in 1836, leaving surviving, her husband and four minor children. Before her death a partial partition was had between the devisees, in which she did not join. The parties to the partition took possession of their respective parts as they had agreed upon them.

After the death of Matilda, Geo. W. Churchwell, claiming to be the purchaser of the interest of the daughter Ellen, applied to the circuit court for partition, which was granted. Allen Perry was in possession, and he alone was notified of the proceeding.

Fisher *v.* Edington.

Afterwards, and on April 1, 1839, Allen Perry filed a petition in the chancery court, setting forth his marriage in 1828. That he had issue of that marriage four children, all of whom were then alive. That the father of his wife died in 1833, after having made his will, by which he bequeathed to petitioner's wife and Ellen DeArmond, 120 acres of land. That said land was divided and about 55 acres fell to the share of petitioner's wife, who died in 1836. That petitioner built and fitted up on the land a tolerably comfortable house. He supposed the land would rent for about fifty dollars per annum. That he is a carpenter and finds it more profitable to work at his trade than to farm the land, at which latter business he could not make a support for his family, and if he were to rent the land, the rents would be small and the land very much deteriorate in value, to nearly one-half. That he can get about $800, $400 in cash and the balance at twelve months, for the land. That he is desirous of removing from Knox county. That he can make a much better investment for the benefit of his children with the price of the land than the land can ever possibly become, and he confidently, believes it would be greatly to their benefit that the land should be sold and the proceeds of it invested in a better way, and prays the court to empower him to transfer the title in fee on such terms as the court may think agreeable to equity and not inconsistent with the interest of his children.

We have given a full statement of the allegations of the petition in its language. The children were

not made parties, their names are not given and no guardian *ad litem* appointed.

A reference was had and a report favorable to the petition was made. A decree was pronounced reciting the allegations of the petition, and adding that upon the death of the mother "the title to said land has become vested in said four children of petitioner by his wife, the said Matilda, and that it is for the interest of said children that said land be sold," etc. And decreeing "that petitioner be authorized to sell said land provided he can get the sum of $800 therefor," etc. "That he pay over the moneys received to the clerk and master of this court, there to remain until said petitioner produces to said clerk and master a regular certified copy of his appointment as guardian of said children, and then said money is to be paid over to him after deducting the costs of this cause. Said petitioner is authorized to execute a conveyance for said land to the purchaser, but the purchase money shall be and remain a lien upon said land until paid." This was in April, 1840. This is the end of all actions in court and before and with the clerk and master.

In September, 1840, Allen Perry was appointed guardian, and on the 21st day of November, 1840, made a deed to William Keith to the land in controversy. The deed recites "that the said Allen Perry, for himself and as guardian of his children, and in pursuance of a decree of the chancery court of Knox county, and as heir of John DeArmond by my wife, do bargain," etc.

Complainants are the grand-children of Matilda Perry.

Fisher *v.* Edington.

All her children having died before their father, Allen Perry, who died in 1876. Three defenses are interposed to their right of recovery. First, it is insisted that although the ¦decree authorizing Allen Perry to sell is absolutely void, still "his petition operated to merge the life estate of Allen Perry into the estate in remainder of Matilda Perry's children so as to make them tenants in fee."

"The deed of the court through its commissioner Allen Perry, operated to dissieze Matilda Perry's children, and set the statute of limitations to running against them so that they were obliged to sue within three years after the removal of their disability of infancy." That "said deed operated as a color of title to William Keith and defendants, under which their possession of said land would perfect their title."

The Referees held, upon the question made by these propositions, that the acts of Perry made a surrender of his estate by curtesy to his children, that they immediately took the entire estate. That his conduct amounted to a gift, and being for their benefit, acceptance would be presumed. This view is ably presented in their report, prepared by Commissioner Kirkpatrick, and many authorities cited, all which being of similar import, we will notice only a few of them.

In Kent's Com., vol. 4, page 102, it is said, "surrender is the yielding up of an estate for life or years to him that hath the next immediate estate in reversion or remainder, whereby the lesser estate is drowned by mutual agreement."

Washburn on Real Property, 546, lays down the

rule to be, " if a tenant for life or years yields up his estate to him who has the immediate estate in reversion or remainder, it is called by the law a surrender, the effect of which is to extinguish all claim for rent not due at the time.    The estate for years in such case is drowned by mutual agreement between them."

Bouvier, in his Law Dictionary, defines surrender, " a yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder, by which the lesser estate is merged in the greater by mutual agreement."

Treating the petitioner as having consented that the estate of the life tenant should be surrendered to the reversioners, is a case of mutual agreement made. The minor children were not before the court, the petition was *ex parte* in the name of Allen Perry, not so much as calling or giving the names of his children.    The purpose of the petition, if ever intended to surrender, was to do so upon the express condition that Perry first be permitted to convert the estate into money, and then invest the money as he desired without limitation or restriction as to time or place, or the character of property to be bought.    Beyond this, it no where appears in the petition that he abandoned his estate by curtesy, he simply states facts, defining the condition of the title of the estate, and stops short. If we go to his deed we find him conveying " for himself as guardian of his children, and as heir of John DeArmond by his wife," and in that deed no mention is made of intention to surrender to his chil-

dren nor even to reinvest for their benefit.   He gets the money and appropriates every dollar of it to his own use.   If the petition, the decree, the deed and the use of the money prove any thing, it is that Perry meant, not to advance the interest of his children, but to fraudulently deprive them of their inheritance.

The only effect of his deed to Keith was to part with his life estate, under him Keith and his vendees were rightfully in possession, and no suit could be brought to eject them until after the death of Perry.

There could, under the facts, be no such thing as mutual agreement for a surrender.   The statement of facts in the petition merely shows that he was life tenant.   The decree only says the estate descended to the children.   No conclusion is announced by either petition or decree, that intimates a surrender.   The language of the decree is not the language of Perry, but a conclusion of the draftsman, or it may be of the court.   The estate did descend to the children, but subject to the life estate of the father.   If we hold the case to be that a gift implies a benefit, and that an acceptance will be presumed even as to infants, we have in this case an implication of benefits negatived by the positive acts of Perry, and the rule cannot apply.   Whether such rule can apply in any case to the prejudice of infants, need not now be decided.

Courts will not construe even doubtful words against infants in favor of one *sui juris*, especially when these words are employed by the adult in the absence of the infants, much less will they construe a new alle-

gation of facts making out two titles into a surrender of the lesser to the prejudice of the greater estate.

The exception of complainants to the report of the Referees must be sustained.

The second ground of defense is that the will of DeArmond is void for uncertainty, and that the land cannot be partitioned under its provisions. John DeArmond is shown to have owned no other lands. The tract has been, by the consent or acquiescence of the parties divided, and for years each has controlled, managed and sold off from his share so set apart. It is true that the interest of Matilda was in common with her sister Ellen, and so remained until after her death, when Ellen sold to Churchwell, who procured a division, perhaps irregularly, still that partition has been acquiesced in by all concerned. It constitutes a link in defendant's chain of title under the will of DeArmond, the common source from which both parties claim, defendants cannot be heard to question it, and complainants have ratified it by the institution of this suit.

The statute of 1870, Code, 2768a, the third ground of defense, has, we think, no application. It has reference to judicial sales. The sale here was not a judicial one. The court had no jurisdiction of the parties owning the estate in fee, nor of the estate itself. The so-called decree was simply an entry upon the minutes without authority, and was binding upon no one. It was an act of officiousness. The complainants are entitled to reasonable rents to be credited by taxes paid by defendants since the death of Allen Perry.

Fisher v. Edington.

The court is divided in opinion upon the question of compensation for improvements. Judge Cooper thinks that section 3261 of Code, as follows, "Persons holding possession in good faith under color of title are entitled to have the value of their improvements set off against the rents and profits which the plaintiff may recover," applies, and that respondents are entitled to compensation for improvements, but not to exceed the rents accruing since the death of Allen Perry. The other members of the Court think this statute does not apply.

My opinion is, the defendants are not entitled to compensation for improvements made before and up to the falling in of the life estate. By their purchase they took just such estate as Perry held. By his deed he only conveyed a life estate. A tenant for life cannot recover for betterments, the tenant voluntarily takes his chances of being permitted to enjoy the expenditures he has made upon the land of another: 6 Lea, 379. "A tenant cannot as a general rule, without the concurrence of the reversioner, place improvements upon the life estate and compel the reversioner to pay for them upon the falling in of the life estate: 1 Wash., 24. And a mere acquiescence on the part of the reversioner or remainder-man would not bind him. He must in general have conceived, consented or connived at the ameliorations upon his estate in order to be estopped from resisting the demands for improvements, for otherwise it would be, in the language of Judge Green, to reward him (the tenant) for volunteering his labor on another man's land and to punish the owner

for permitting him to do it: 6 Hum., 327; *Broyles* v. *Waddell*, 11 Heis., 39. Those holding under a tenant for life stand upon no higher ground than their vendor. The general presumption is, they knew the title purchased. In this case it is conclusive. The deed under which they hold recites the fact that the sale was made as guardian. This was sufficient to put them upon inquiry as to the state of title and what they would get under a purchase from Perry. They had the right and it was their duty to demand of Perry and Keith a display of title, and they cannot now be heard either to say they did not do so, or that they were ignorant of title. If they bought upon the faith of representations they must return to their warranties for indemnity.

The deed from Perry to Keith has been upon the books of the register since December, 1840, and was notice to all, not only of Keith's title, but of that of his vendor. Under all these circumstances, if the defendants have bought recklessly, they must submit to the consequences of that recklessness.

The argument that the defendants have placed valuable improvements upon the lands can have no weight. We must administer the law as we find it, while the rule may work a hardship upon them, the reverse would work as great or greater upon complainants.

In this case we would, perhaps, have the owners of the fee improved out of their patrimony. Such ruling would enable designing and unscrupulous men to buy up estates with doubtful or sleeping titles, or estates belonging to minors at their own figures, and perfect

Fisher *v.* Edington.

their titles by making such improvements as would put it out of the power of rightful claimants ever to reinstate themselves. Incumbents would in 'such cases prove the highest value of improvements, force the land to sale and buy at the estimated value of improvements to re-imburse themselves, thus getting the title for nothing. Defendants, perhaps, have redress through covenants, complainants can only be relieved by a recovery of their lands. They have been guilty of no wrong or neglect, while defendants have, in venturing upon titles without investigation, or taking chances that true owners will not discover their rights until too late to assert them.

The rules cited and the reasoning upon which they are based do not apply. After disabilities removed and the rights of complainants accrued, they ought not to be permitted to stand by with knowledge of their rights and see improvements upon their estates without objection or claim from them, and then recover all without compensation. If the law is construed to allow this, it will be the policy of owners to wait until just such time as within which they may assert their titles in order that they may reap advantage from expenditures by tenants who may be ignorant in fact of claims superior to theirs. An allowance, therefore, should be made for such permanent improvements, so far as they have enhanced the value of the land, or have been placed upon the lands since the death of Allen Perry, the inquiry to be confined to the actual enhanced value of the land brought about by such improvements, that value to be fixed at the

time when possession is rendered to complainants. The
majority are of opinion that under the rules of equity
respondents are entitled to compensation for all perma-
nent improvements upon the land at the date of sur-
render to complainants, to the extent of the *actual*
*enhanced value of the lands* at that date.

A decree will be entered accordingly, writs of pos-
session will issue. The cause will be remanded for
the account.

Affirmed.