William B. UHLHORN, et al, Plaintiffs/Appellants,

v.

Charles Lee KELTNER, et al, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 15, 1986.

Permission to Appeal Denied by Supreme Court, Jan. 5, 1987.

William H. Luck, Memphis, for plaintiff/appellants.

J. Houston Gordon, Covington, for defendants/appellees.

TOMLIN, Presiding Judge, Western Section.

This case arises out of a dispute over title and right to possession of an approximate 490-acre tract of land in Tipton County. Plaintiffs brought this action in 1977, challenging the adverse claim of the defendants to this tract. Both the chancery court and the court of appeals awarded the entire tract to the defendants. Permission to appeal was granted. In *Ulhorn v. Keltner*, 637 S.W.2d 844 (Tenn.1982), hereafter referred to as *"Uhlhorn I*," our Supreme Court reversed the lower courts, awarding some 360 acres of the tract to plaintiffs and approximately 130 acres to defendants.[1] The case was remanded to the chancery court with instructions to divide the property and fix the boundaries of the tract as ordered. The chancellor was also directed to make proper allowances to plaintiffs for accrued rentals and to make any other proper adjustments of the rights of the parties consistent with that court's opinion.

---

**1.** In *Uhlhorn I*, the court referred to the tract as consisting of 430 acres. However, on remand it was discovered that the portion of the tract awarded to plaintiffs consisted of approximately 363 acres rather than 300 acres. For clarity, we will refer to the approximate 363-acre tract as the "360 acres."

On remand the chancellor, sitting without a jury, awarded plaintiffs accrued rentals in the amount of $179,151.78. He also determined—and so decreed—that this amount was totally set off by the sum due defendants for the permanent improvements made by them on the 360 acres held to belong to plaintiffs. It is from this decree that plaintiffs now appeal. Two issues are raised by this appeal: (1) Did the chancellor err in determining the amount of accrued rents due plaintiffs? (2) Did the chancellor err in determining that defendants were entitled to a setoff for the permanent improvements? We answer both of these issues in the affirmative.

## I. BACKGROUND FACTS.

In *Ulhorn I,* then Chief Justice Harbison made an excellent and thorough presentation of the background facts to this complex litigation, in addition to reaching a sound result. However, for clarity's sake we repeat some of the background here. The 490-acre tract of land with which we are dealing is located in Tipton County, being part of a region known as "Centennial Island." Prior to the change in course of the Mississippi River, or its avulsion in 1876, it was once part of the river bed. Lying entirely within the perimeter of what was once the river bed is a certain area known as "Willow Lake." For many years until it was drained and cleared by defendants, Willow Lake was a marshy swamp area considered by many to be a hunter's and fisherman's paradise. At the time of this litigation plaintiffs owned substantial acreage to the south of Willow Lake, while defendants owned substantial acreage north of Willow Lake. The 490-acre tract was located in a disputed boundary area between plaintiffs and defendants.

The 360 acres which were awarded to plaintiffs consisted of the northern half of Willow Lake and land immediately adjacent to and north of Willow Lake. The 130 acres awarded to defendants were directly north of this area awarded to plaintiffs. The plaintiffs now own all of the area known as Willow Lake.

In 1929 this tract of land was the subject of litigation between the State of Tennessee and the predecessors in title of all the parties to this litigation. In 1930, by decrees of the Chancery Court of Tipton County, the entire tract was awarded to the State of Tennessee. The state subsequently sold the 490 acres to plaintiffs' predecessor in title, who in turn subsequently conveyed the property to plaintiffs. The northern boundary of that tract was referred to as the "Gauss Yellow Line," a line well to the north of Willow Lake.

Defendants derived their title through a family by the name of Williams. The Williams were named as defendants in the 1930 litigation but elected not to defend. Whatever right they had was divested in that litigation. Later, through *mesne* conveyances the Williams sold their remaining property on Centennial Island to the defendants. They recorded deeds to the property in 1961. These deeds overlapped the Gauss Yellow Line, Uhlhorn's northern boundary, by approximately 130 acres. However, the calls of these 1961 deeds were well to the north of and did not include the Willow Lake area.

In the 1960's plaintiffs learned that the 1961 deeds recorded by defendants overlapped with their property line and soon a dispute between the parties developed. In 1968, plaintiffs and defendants entered into a formal agreement to settle the dispute, but for various reasons it was never carried out.

In 1971 and 1972 defendants began performing improvement and reclamation work on the 360 acres returned to plaintiffs by the court in *Uhlhorn I.* As previously noted, at that time this area was swampy, subject to flood and totally unsuitable for cultivation. Defendants cleared the land of timber and undergrowth. Defendants also constructed a dam and installed a pump in order to partially control flooding of this tract. The dam and pump were not located on any part of the 360-acre tract here involved, but rather were located on adjacent property owned by plaintiffs and leased to one P.D. Johnson, who took part in the

draining-clearing operation with defendants. All of the improvements were completed by the time plaintiffs filed suit in 1977.

Sometime between 1973 and 1975 defendants ran a fence through the middle of Willow Lake. The defendants executed partition deeds among themselves in 1976. These deeds called for the fence as their southern boundary. In February, 1977 plaintiffs filed this suit.

As previously noted, the parties' boundary dispute was resolved by the Supreme Court in *Uhlhorn I.* The Court there held that plaintiffs had clear record title to the entire 490-acre tract deraigned from the state through the 1930 chancery court decrees. The court also held that defendants were entitled to the 130 acres included within the express calls of the 1961 deeds by virtue of adverse possession. The remand directed that "[t]he Chancellor will also make proper allowances to appellants [plaintiffs] for accrued rentals and any other proper adjustments of the rights of the parties consistent herewith." *Uhlhorn,* 637 S.W.2d at 852–853.

On remand, the chancellor found that plaintiffs were entitled to $179,515.78 in accrued rental and that defendants were due $181,795.00 for the value of the permanent improvements to the land held to belong to the plaintiffs. The chancellor then held that this amounted to a total setoff between the parties and that neither party was entitled to any further payment.[2]

The parties have stipulated that 1975 through 1982 were the years for which accrued rentals are due on the approximate 360 acres. The preponderance of the evidence establishes that 100 of the 360 acres were usable for farming in 1975, 255 acres were usable for farming in 1976, and from 1977 through 1982 some 355 acres were usable for farming. It has also been stipulated that defendants are entitled to a cred-

it for the rent paid into court in 1977. Other pertinent facts will be included in our consideration of the issues.

## II. ACCRUED RENTS DUE PLAINTIFFS.

It is without dispute that the 360 acres awarded to plaintiffs were held by defendants from 1975 through 1982 and to the extent that it was possible, as noted above, defendants carried out farming operations on the land. Based upon the proof presented the chancellor found that the fair rental value of the crop land was $30 per acre for the years 1975 to 1976 and $65.00 per acre for the remaining years through 1982. It is uncontested that defendants bid and subsequently paid $65.00 per acre as rent on the property for the year 1977. We specifically note, however, that the rental value as found by the chancellor was based upon proof of rental value of the land in its *improved* state, following the clearing and draining operation carried out by the defendants. While the chancellor was correct in holding that the proper measure of damages due plaintiffs was the fair rental value of the land, we are of the opinion that he erred in awarding plaintiffs the rental value of the land in its improved state.

A property owner whose land has been wrongfully held by another is entitled to an accounting for the accrued rents and profits on the land during the period of wrongful withholding. *See e.g., Ross v. Scott,* 83 Tenn. 479, 490 (1885); *Vincent v. Hall,* 1 Shan.Cas. 597 (Tenn.1876). Stated another way, the measure of damages for a temporary injury to real property, such as a trespass and subsequent withholding, is in most cases the rental value of the property. *See Citizens Real Estate & Loan Co. v. Mountain States Development Corp.,* 633 S.W.2d 763, 766–67 (Tenn.App. 1981). *See generally* 25 Am.Jur.2d *Eject-*

---

**2.** In 1977, while this lawsuit was pending, defendants paid into the court a sum of money constituting rent for that year. Following the Supreme Court's decision in *Uhlhorn I,* this sum, totaling $30,399.22 including interest, was distributed to plaintiffs in November, 1982.

This rental payment was for the entire 490-acre tract, not just the 360 acres that were ultimately decreed to belong to plaintiffs. The disbursement took place prior to the hearing below following remand.

ment § 151 (1966); 10 Tenn.Juris., *Eject-ment*, § 36 (1983). In cases where the wrongful possessor has improved the land, the real value charged should be for the land in its previous unimproved state. *See Ross*, 83 Tenn. at 488; *Griffiths v. Ogle*, 6 Tenn.App. 695, 700 (1928); D. Dobbs, *The Law of Remedies* § 5.8, at 368 (1973); 41 Am.Jur.2d *Improvements* § 33 (1968).

■ Plaintiffs contend that the only way to fully compensate them for defendants' wrongful possession of their land is to award them what profits they could have made by farming the land themselves. We find no merit in this argument. Plaintiffs have cited no Tennessee authorities for this theory and our own research uncovers none. Furthermore, we are of the view that to employ such a measure of damages would be to engage in speculation. Plaintiffs also ignore the fact that their 360 acres were not fit for cultivation until improvements were made by defendants.

While the chancellor did find from the proof that the 360 acres in question had a fair market value of $300 per acre prior to the possession of and improvement by the defendants, he made no findings as to the fair rental value of this land in its unimproved state. Notwithstanding that one witness testified that the unimproved land could not have been used for farming and was only good for hunting and fishing and therefore had no rental value, in our opinion this does not constitute a sufficient judicial determination of this fair rental value prior to the improvements being made. Upon remand the chancellor will be called upon to make a thorough and proper determination of the fair rental value of the 360 acres prior to its enhancement in value by the improvements.

## III. SETOFF OF DEFENDANTS.

■ Defendants contend that they are entitled to a setoff against any fair rental value awarded to plaintiffs based upon the value of the permanent improvements to the property. On the other hand, plaintiffs contend that the Supreme Court opinion in *Uhlhorn I* forecloses any consideration of the setoff question. We disagree. The only issue considered and conclusively ruled upon in *Uhlhorn I* was the boundary dispute between the parties. The question of the *"proper allowances ... for accrued rentals and any other proper adjustments of the rights of the parties"* (emphasis added) was remanded to the chancery court. *Uhlhorn*, 637 S.W.2d at 852–53. This includes the question of any allowable setoffs for improvements.

While the record reveals that plaintiffs were aware that defendants were undertaking to drain and clear the 360 acres well before plaintiffs filed their lawsuit in 1977, we also note and are bound by the finding of the Supreme Court in *Uhlhorn I* that the overwhelming preponderance of the evidence established that at no time prior to the middle 1970's did plaintiffs have any idea that defendants were making any claim of record or otherwise to any portion of Willow Lake. *Uhlhorn*, 637 S.W.2d at 849. Moreover, it is undisputed that defendants were aware of plaintiffs' claim of ownership to the 360 acres prior to and during the time that they were carrying out their improvement of the property. Defendant Bishop Glass III testified at the hearing before the chancellor that he knew plaintiffs' claimed the whole 490-acre tract south of the Gauss Yellow Line, but he thought defendants' claim was a superior one.

The common law rule was, in essence, that no compensation was allowed for improvements made to the land of another without his consent. *Rainer v. Huddleston*, 51 Tenn. 223, 225–26 (1871); *Townsend v. Shipp's Heirs*, 3 Tenn. 293, 298 (1813). *See Note Improvements-Mistake as to Boundary*, 17 Tenn.L.Rev. 878 (1943). As have many other states, Tennessee has abrogated this harsh rule by statute. Tenn.Code Ann. § 29–15–123 provides as follows:

> *Improvements setoff.*—Persons holding possession in good faith, under color of title, are entitled to have the value of their permanent improvements set off

against the rents and profits which the plaintiff may recover.

Courts of equity of this state, independent of the improvement statute quoted above, have often required an owner seeking the aid of the chancery court in recovering his property to do equity by compensating a mistaken improver for the value of the improvements. *See, e.g., Howard v. Massengale,* 81 Tenn. 577, 588 (1884); *Sequatchie Coal Co. v. Sunshine Coal & Coke Co.,* 25 Tenn.App. 604, 166 S.W.2d 402, 404 (1942); *Mercy v. Miller,* 25 Tenn. App. 621, 166 S.W.2d 628, 633 (1942); Tenn. Code Ann. § 29–15–121.

■ In our opinion, whether one seeks relief for mistaken improvements under Tenn.Code Ann. § 29–15–123 or for compensation in a court of equity, four elements must be present in order to prevail: (1) permanent improvements; (2) possession; (3) good faith; and (4) color of title. *See e.g., Ross v. Scott,* 83 Tenn. 479, 485 (1885) (good faith required); *Howard v. Massengale, supra,* (color of title required); *Fisher v. Edington,* 80 Tenn. 189, 200 (1883) (permanent improvements required); *Mercy v. Miller, supra,* (possession and color of title required); and *Schink v. Haynie,* 2 Tenn.Ch.App. 571 (1902) (good faith required).

■ The amount that can be recovered as compensation for improvements is the amount by which the improvements enhance the value of the land. This is not the same as the actual cost of the improvements. *E.g., Smoot v. Smoot,* 80 Tenn. 274, 277 (1883); *Wilson v. Scruggs,* 75 Tenn. 635, 640–41 (1881); and *Wilburn v. Kingsley,* 3 Tenn.App. 88, 101 (1926). While there seems to be some confusion in the cases as to whether the compensation for the improvements is limited to the amount of mean rents and profits due the true owner of the land, we find it unnecessary to resolve this confusion, as we have concluded and so hold that defendants are not entitled to a setoff whatsoever for improvements they made on plaintiffs' land.

■ We base our holding on the reason that defendants lack at least one of the elements necessary to claim a setoff—that of "color of title" to the 360 acres which they improved. There is no doubt that their clearing and draining of the land constituted a "permanent improvement." *See Ridley v. McNairy,* 21 Tenn. 174, 175–77 (1840). We think it also obvious that defendants were "in possession" of the land they improved. We do not agree with plaintiffs' contention that defendants lack this element because the dam and pump were built and installed on property of the plaintiffs' lessee. The area protected from flooding by the dam and drained by the pump was certainly in possession of the defendants from 1975 to 1982. Unquestionably, the clearing and cleaning by the defendants took place on land which they possessed.

■ While admittedly a close question, the holding of the chancellor below that defendants were in possession of the land that they improved in good faith is correct. Defendants knew of plaintiffs' claim of title to the area on which they were making improvements. Nonetheless, defendants were advised by their counsel that they were the owners of this tract of land notwithstanding plaintiffs' claim. While this advice was based on counsel's disregard of the correctness of the Gauss Yellow Line as established in the 1930 litigation, this disregard of a judicial decree by counsel cannot be imputed to defendants, who were laymen.

■ As for color of title, we find nothing in the record to support the conclusion of the chancellor that defendants held the 360 acres that they improved under "color of title." Mere good faith "belief" is not sufficient. "Color of title" has been defined by our Supreme Court as follows: "It is a legal title in form or appearance by grant, or its equivalent, deed, will, inheritance in descent, *or other means by which a legal title may be, and is supposed to be passed to the claimant."* *Wallace v. McPherson,* 187 Tenn. 333, 214 S.W.2d 50, 53 (1947). *See also* D. Dobbs, *The Law of*

*Remedies,* § 5.8, at 369 (1973); 41 Am. Jur.2d *Improvements* § 13 (1968).

In our opinion, defendants' mistake was one of location, not of title. Furthermore, to qualify as "color of title," an invalid deed must embrace the disputed acreage. *See Blankenship v. Blankenship,* 658 S.W.2d 125, 127 (Tenn.App.1983). Defendants were not holding the 360-acre tract under any such deed. The 1961 deeds to defendants embraced only the 130 acres which were ultimately awarded them in *Uhlhorn I* by adverse possession. They did not embrace the 360 acres therein awarded to plaintiffs. While the 1976 deeds of exchange did embrace the 360 acres, they cannot serve as a basis of color of title as they were deeds of partition among the defendants themselves. Finally, while advice of counsel may serve as a basis for good faith, it cannot support a claim requiring color of title. We thus conclude that defendants lacked this necessary element in order to support an award of setoff for their improvements.

In their brief defendants contend that plaintiffs should be estopped from denying them a setoff for the value of the improvements. We reject this argument. When defendants fenced in the 360 acres and proceeded with their improvements on what was held to be the plaintiffs' property, they knew of plaintiffs' claim of ownership to this property. Defendants proceeded at their own risk and cannot now claim an estoppel.

### IV. PRE–JUDGMENT INTEREST.

Finally, defendants claim the chancellor erred in allowing plaintiffs pre-judgment interest on the accrued rentals determined to be due. Pre-judgment interest is not allowed as a matter of right on unliquidated damage claims. *Johnson v. Tennessee Farmers Mut. Ins. Co.,* 556 S.W.2d 750, 752 (Tenn.1977). The allowance of pre-judgment interest is within the discretion of the trial court. *First National Bank v. DeWitt,* 18 Tenn.App. 634, 641, 81 S.W.2d 396 (1934). While we find that the chancellor was in error in computing the amount of accrued rentals, we are of the opinion that he did not abuse his discretion in allowing pre-judgment interest. Therefore, it would be appropriate for pre-judgment interest to be allowed on the amount of the accrued rentals determined by the chancellor in accordance with this opinion upon remand.

For all of the reasons set forth herein, as to the amount of rental due plaintiffs we reverse the decree of the chancellor and remand this cause for a determination by him as to the fair rental value of the land prior to and without any improvements, which rental value is to serve as a basis for computation of rents due plaintiffs. Against whatever amount is found to be due, defendants are entitled to a credit for the amount of the rent already paid by them and distributed to plaintiffs. We likewise hold that the chancellor was in error in allowing defendants any setoff for their improvements and thus reverse the decree of the chancellor as to this issue. The awarding of pre-judgment interest to plaintiffs on the rentals due them is affirmed. Costs in this cause are taxed one-half to plaintiffs and one-half to defendants, for which execution may issue, if necessary.

CRAWFORD and HIGHERS, JJ., concur.