IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2007 Session

# DAVID RICHARD HUDDLESTON v. PATRICIA WAGGONER HUDDLESTON

Appeal from the Circuit Court for Blount County
No. 26112-C    W. Dale Young, Judge

No. E2007-00392-COA-R3-CV - **FILED JANUARY 16, 2008**

The plaintiff loaned the defendant $50,000 which was to be repaid in 15 monthly installments of $800 each with a final balloon payment of $46,600. The parties agreed that the total amount to be repaid was $58,600, but did not specify an interest rate or make any provision for interest on the balance in the event the balloon payment was not timely made. The defendant paid the initial 15 monthly installments, but failed to pay the balloon payment, and instead continued to make monthly payments for approximately 44 more months paying a total of $59,416. The issue presented is what amount of interest, if any, is owed on the balloon payment that the defendant failed to timely pay when the contract failed to make a provision for interest in the event of default. The trial court held that the parties had agreed that the defendant would pay interest at the rate of 14.1 percent per annum, based upon the $8,600 he agreed to pay in excess of principal, and that the plaintiff was entitled to have the balance of the loan outstanding at the time of default paid at such rate. Upon review, we conclude that the parties failed to agree on an interest rate to be paid in the event of default of the balloon payment, and accordingly, the judgment of the trial court is vacated to the extent that it awards the plaintiff interest at the rate of 14.1 percent, and the case is remanded with instructions that the trial court grant the plaintiff an award of prejudgment interest in accord with Tenn. Code Ann. § 47-14-102. The judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Thomas H. Shields III and Chadwick B. Tindell, Knoxville, Tennessee, for the appellant, David Richard Huddleston.

William A. Reeves and Daniel J. Morse, Knoxville, Tennessee, for the appellee, Patricia Waggoner Huddleston.

# OPINION

## *I. Background*

In May 1998, Patricia Huddleston loaned $50,000 to her ex-husband, David Huddleston, and the parties signed a pre-printed retail installment contract ("Contract"). The Contract provided that the principal sum of $50,000 was to be paid in 15 monthly payments of $800 each, beginning on July 1, 1998, with a final balloon payment of $46,600 to be paid on October 1, 1999. The Contract did not make any reference to interest payments but did provide that "[t]he amount you will have paid when you have made all scheduled payments [is] $58,600." On the same date, the parties also signed a document entitled "TO WHOM IT MAY CONCERN" which stated as follows:

> I have borrowed a sum of $58,600.00 . . . from Patricia Waggoner Huddleston. I agree to pay $800.00 per month for 15 months, beginning July 1, 1998, and one final payment of $46,600.00 . . . on October 1, 1999. I will make said payments directly to Patricia Huddleston, no later than the 5th of each month.
>
> If for some reason I am unable to repay this loan in full by October 1, 1999, I authorize the unpaid balance to be withdrawn from my 401K savings plan, and given to Patricia Huddleston to repay this loan.

Mr. Huddleston paid 15 monthly $800 payments, but failed to make the final balloon payment of $46,600. He continued to make monthly payments until either May 30, 2004, or June 2, 2004 when he tendered a final $800 payment and indicated it was his last payment. As of his last payment, he had paid a total of $59,416. During this post-balloon payment time period, the parties attempted, unsuccessfully, to agree on an interest rate applicable to the remaining balance.

After the parties reached a stalemate, Ms. Huddleston filed suit for a determination of the amount due. Following a nonjury trial, the trial court found that it was the parties' intent that Mr. Huddleston was to pay $8,600 interest on the principal amount of $50,000, which was an effective rate of interest of 14.1 percent per annum; the parties intended the remaining principal balance of $46,600, to bear interest; and the parties failed to agree on an interest rate different from the initial agreed upon effective rate of 14.1 percent and therefore, ruled that Mr. Huddleston owed interest at the rate of 14.1 percent on the principal balance. Mr. Huddleston appealed.

## *II. Issue*

The sole issue we address is whether the trial court erred in its determination that it was the intent of the parties that Mr. Huddleston pay interest at the rate of 14.1 percent per annum on the

unpaid balance of $46,600 after he failed to make the balloon payment of that amount as required by the contract.

## III. Analysis

### A. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). There is, however, no presumption of correctness with regard to the trial court's conclusions on matters of law. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). The construction of a contract is a matter of law, *Barnes v. Barnes,* 193 S.W.3d 495, 498 (Tenn. 2006), and thus, our review in this case is de novo.

The rules governing the construction of a contract are well-settled and require that the courts ascertain and give effect to the intent of the contracting parties, and in interpreting contractual language, look to the plain meaning of the words in the document. *Allstate Insurance Co. v. Watson*, 195 S.W.3d 609 (Tenn. 2006). Further, as we have heretofore stated, "[c]ourts cannot make contracts for parties but can only enforce the contract which the parties themselves have made." *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). Thus, a contract must be enforced as it is written absent fraud or mistake, even if the consequence of doing so would appear to be harsh or unjust. *Heyer-Jordan & Assoc., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

### B. Interest Upon Default

The parties' Contract does not contain any language specifically requiring Mr. Huddleston to pay interest on the loan of $50,000. While the Contract does require that Mr. Huddleston pay $8,600 in excess of the $50,000, it does not follow from that fact that the parties thereby agreed to an effective rate of interest in the amount of 14.1 percent per annum until the date the balloon payment was due and that Mr. Huddleston would continue to pay interest at that rate in the event he defaulted. The Contract is silent as to what was required of Mr. Huddleston upon default. Neither party testified that they agreed to an interest rate applicable to the remaining balance if the balloon payment was not timely made. Unfortunately, it does not appear that either party anticipated such an event occurring. We do not agree that the mere fact that Mr. Huddleston was required to pay a fixed amount of money over and above the principal loan evidences an agreement as to what he would pay upon default. As we have stated, "[c]ourts must avoid rewriting an agreement under the guise of interpreting it." *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003). A provision for interest due after default is missing from the contract. It is the role of the parties to create the terms of their contract- not the role of the court. Under the facts of this case, we decline to infer what the parties may have agreed to had they considered the possibility of default. Accordingly, we are compelled to vacate the trial court's holding that the parties agreed to an effective rate of interest of 14.1 percent per annum and that the balance of the loan unpaid by Mr. Huddleston at the time of default would bear this rate.

While Mr. Huddleston denied an agreement as to the specific rate of interest to be paid upon default, in his testimony at trial he conceded that Ms. Huddleston was due some amount in addition to principal after his failure to make the balloon payment in October of 1999:

> Q. So you believe you owe her something in addition to what you hadn't paid on principal that was due on the balloon payment; is that true?
>
> A. Yes. I mean, I definitely believe that I owe, you know, some additional amount of money because I wasn't able to make that balloon payment.
>
> Q. But the question is whether it is 8 percent, or 12 percent, or 14.1 percent as they have indicated?
>
> A. Yes . . . .

Without question, as a matter of equity, Ms. Huddleston was due some amount for the use of her funds after Mr. Huddleston breached the terms of their contract. We believe the proper means of insuring that Ms. Huddleston is appropriately compensated under the circumstances is by a grant of prejudgment interest. Addressing the matter of prejudgment interest, the Tennessee Supreme Court stated as follows:

> The allowance of prejudgment interest, like attorney's fees, is discretionary with the trial court, *Ulhorn v. Keltner*, 723 S.W.2d 131, 138 (Tenn. Ct. App. 1987), but, "[t]he general rule is to allow interest in all cases where the amount of the debt is certain and not disputed on reasonable grounds." *Textile Workers Union v. Brookside Mills, Inc.*, 205 Tenn. 394, 402, 326 S.W.2d 671, 675 ([Tenn.] 1959). . . . . Loss of use of funds due is the necessary result of the failure to pay an obligation according to its terms. The usual means of compensating for this necessary result is the allowance of interest. Interest recovered in order to make the obligee whole is the relief usually sought, and the allowance of prejudgment interest is "familiar and almost commonplace." *See Deas v. Deas*, 774 S.W.2d [167,] 170 (Tenn. 1989). Consequently, the recovery of prejudgment interest under such circumstances does not require that the plaintiff plead specially.

*Mitchell v. Mitchell*, 876 S.W.2d 830, 831 (Tenn. 1994).

Tennessee statutory law further allows the payment of prejudgment interest pursuant to Tenn. Code Ann. § 47-14-123 which provides as follows:

Prejudgment interest, i.e., interest as an element of, or in the nature of damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

The case sub judice involves a contract subject to Tenn. Code Ann. § 47-14-103 which sets forth maximum allowable interest rates as follows:

Except as otherwise expressly provided by this chapter or by other statutes, the maximum effective rates of interest are as follows:

(1) For all transactions in which provisions of other statutes fix a maximum affective rate of interest for particular categories of creditors, lenders, or transactions, the rate so fixed;

(2) *For all written contracts*, including obligations issued by or on behalf of the state of Tennessee, any county, municipality, or district in the state, or any agency, authority, branch, bureau, commission, corporation, department, or instrumentality thereof, *signed by the party to be charged, and not subject to subdivision (1), the applicable formula rate*; and

(3) For all other written transactions, ten percent (10%) per annum.

(Emphasis added).

The italicized language, pertinent to this case, references "the applicable formula rate" which is defined at Tenn. Code Ann. § 47-14-102(3) as follows:

(3) "Applicable formula rate" at any time is the greater of:
(A) The "formula rate" in effect at such time; or
(B) The "formula rate" last published in the Tennessee Administrative Register prior to such time, pursuant to § 47-14-105[1];

---

[1]Tenn. Code Ann. § 47-14-105 (2001) states, in relevant part, as follows:
(a) Upon the publication by the board of governors of the Federal Reserve System of the average prime loan rate, as described in § 47-14-102, the commissioner of financial institutions shall:
 (1) Promptly make an official announcement of the formula rate;

-5-

Further, subsection (7) of Tenn. Code Ann. § 47-14-102 defines "formula rate" in pertinent part as follows:

> (7) "Formula rate" means an annual rate of interest four (4) percentage points above the average prime loan rate (or the average short-term business loan rate, however denominated) for the most recent week for which such an average rate has been published by the board of governors of the Federal Reserve System, or twenty-four percent (24%) per annum, whichever is less;

Tenn. Code Ann. § 47-14-102(7) (Supp. 2007). Having determined that the trial court erred in ruling that the parties agreed to a contractual interest rate of 14.1 percent per annum, we vacate the trial court's judgment setting interest in that amount. Furthermore, we remand with instructions, consistent with Tenn. Code Ann. § 47-14-102(2),(7), that the trial court calculate a proper rate of prejudgment interest to be paid by Mr. Huddleston and total amount consequently due on the $46,600 principal balance from the time of his default on October 1, 1999.

### IV. Conclusion

For the foregoing reasons, the judgment of the trial court is vacated to the extent that it awards interest at the rate of 14.1 percent per annum and affirmed in all other respects. This case is remanded to the trial court for further action consistent with the instructions stated herein. Costs of appeal are assessed to the appellee, Patricia Waggoner Huddleston.

_____
SHARON G. LEE, JUDGE

---

(2) Cause the dissemination of such announcement to the news media in such manner as the commissioner deems appropriate; and
(3) Cause to be published in the Tennessee Administrative Register the formula rate as determined by the average prime loan rate first published each calendar month.
(b) In contracting for interest pursuant to the provisions of § 47-14-103(2), any person shall entitled to rely upon the formula rate thus announced or published by the commissioner; provided, that a formula rate shall not be deemed to have been published until seven (7) days have elapsed following the publication date stated in the issue of the Tennessee Administrative Register containing the announcement of such formula rate.