MERCY v. MILLER.—166 S. W. (2d) 628.

Middle Section. May 9, 1942.

Petition for Certiorari denied by Supreme Court, December 5, 1942.

Noah W. Cooper, of Nashville, for appellant.
Z. Alexander Looby, of Nashville, for appellee.

FELTS, J.   This is an ejectment suit involving a lot which fronts 25 feet on the north side of Berry Street, Nashville, and runs back between parallel lines 120 feet to an alley.   There is a small dwelling on the lot, and the property is said to be worth only about $200 or $300.

Both parties claim title from a common source, James Mercy, who acquired the property by a deed dated August 3, 1888.   This deed conveyed to him a lot of 50 feet frontage, he later conveyed the east 25 feet, retaining the west 25 feet, which is the subject matter of this suit.

Complainant, Katie Mercy, widow of James Mercy, claims under a deed from him dated May 31, 1939, a few months before his death. Defendant, Della Miller, his stepdaughter by a former marriage, claims by a parol gift perfected by 30 years' adverse possession. She also alleged that complainant's deed was void for champerty and because the grantor was mentally incompetent; and that, if her title failed, she was entitled to an equitable lien on the property for improvements made to the value of $300; taxes paid amounting to $75, and $500 for services by her to James Mercy in taking care of him and furnishing him board and lodging; and, filing her answer also as cross bill, she prayed that complainant's deed be removed as a cloud upon her title, and in the alternative for a decree charging the property with a lien for the amounts above stated.

The cause was heard orally according to the forms of chancery. The chancellor found for complainant, decreed title and possession to her, and dismissed defendant's cross bill. Complainant gave bond and obtained possession, pursuant to Code, sections 9142-9144; and defendant appealed, and insists that the chancellor should have sustained her claim by parol gift and adverse possession, and should have adjudged complainant's deed void for want of proof of delivery and for champerty; and that, in any event, the chancellor should have decreed her a lien on the property for the improvements.

Complainant called as a witness Walter S. Walker, a Nashville attorney, who testified that he was called and went to 49 Maury Street, where complainant and her husband, James Mercy, were living; that Mercy asked him to write a deed and gave him the "data;" and that he returned to his office, wrote the deed, took it to Mercy, and told him to get a notary. The witness identified the deed to complainant as the deed he had written for Mercy, and filed it as an exhibit to his testimony. The original is sent up as part of the bill of exceptions. It appears to have been signed and acknowledged by Mercy on May 31, 1939, and was recorded June 1, 1939. The consideration stated was one dollar and "the love and affection I have and bear for my beloved wife, Katie Mercy." The description was the same as that of the deed to Mercy in 1888, which included the original 50 foot lot. While not fully explained, this mistake was doubtless due to the fact that the draftsman copied the description of that old deed, either overlooking or not knowing that Mercy had already conveyed the east half of the 50 foot lot. Upon complainant's motion, the chancellor ruled that the production of her deed, there being no issue raised by the pleadings as to its execution and delivery, made a prima facie case for complainant, casting upon defendant the burden of going forward with the production of evidence.

Defendant excepted to this ruling, and adduced her evidence. She testified that about 1880, when she was six years old, her mother and James Mercy intermarried, and they all lived together in the house

involved continuously from 1888, when he bought it, until 1929, when her mother died; and thereafter defendant and her stepfather continued to live there for "several years" until he married and went to live with complainant, leaving the household goods and defendant in this house. She continued to live there. James Mercy died in November, 1939, and this suit was brought April 9, 1940.

Defendant further testified that "over 30 years ago," while she, her mother and stepfather were living in this house, he made an oral gift of it to her; that he handed her his deed by which the property had been conveyed to him, and told her he was giving her the place; and that she had kept the deed, lived in the house, and claimed and held it adversely for over 30 years. She also testified that, after James Mercy died and this suit was brought, he came to her and told her not to worry, he had not given the place to anyone else, and it was hers; but upon objection this was excluded. She called four other witnesses, who said they had heard James Mercy at various times declare that he had given defendant the house.

Despite Code, section 7831 (4), which requires transfers of real estate to be in writing signed by the transferrer, a parol gift of land coupled with an entry by the donee and adverse possession by him for more than seven years will vest him with a possessory or defensive right to the land, under the second section of the act of 1819, Code, section 8584. Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190. But such a claimant has the burden of proving, by evidence entirely satisfactory, not only the gift, but also his adverse possession. Jordan and Ransom v. Maney, 78 Tenn. (10 Lea), 135, 145.

The chancellor saw and heard the witnesses in this case, and his decree comes here supported by a presumption that it is correct, unless the evidence preponderates against it. Code, sec. 10622; Joest v. John A. Denie's Sons Co., 174 Tenn., 410, 416, 126 S. W. (2d), 312, 314. We think the evidence for defendant does not preponderate against the decree. The opportunity and facility for fraud in setting up parol gifts, after the death of the alleged donor, make it the duty of a court to give close scrutiny to evidence offered to prove such a gift. Atchley v. Rimmer, 148 Tenn., 303, 312, 255 S. W., 266, 30 A. L. R., 1481, 1486; Chandler v. Roddy, 163 Tenn., 338, 349, 350, 43 S. W. (2d), 397; Nashville Trust Co. v. Williams, 15 Tenn. App., 445, 452. To sustain such a gift, the proof must be "ample, clear and convincing" as to every fact necessary to make out the gift. Atchley v. Rimmer, supra; Lenow v. Bank of Commerce & Trust Co., 4 Tenn. App., 218, 223; O'Brien v. Waggoner, 20 Tenn. App., 145, 153, 96 S. W. (2d) 170, 174. The only evidence of a gift was defendant's testimony that the deceased had given her the house 30-years ago, and the testimony of other witnesses as to declarations by him that he had made such a gift. We think this was insufficient to establish the gift. Atchley v. Rimmer, supra. That case

indicated that the unsupported testimony of the alleged donee ought not to be accepted as sufficient proof of a gift; and it held that a gift cannot be established by proof of declarations of the alleged donor alone. Chandler v. Roddy, supra.

Moreover, there were several circumstances against defendant's claim. In the first place, is it reasonable to believe that a man would give his home to a stepdaughter and enable her to put him and his wife out of doors? In the second place, if he had given her the property, why would he have later deeded it to complainant? The evidentiary significance of the fact that the decedent had left a will disposing of the subject of the alleged gift was stressed in Atchley v. Rimmer and also in Chandler v. Roddy; and we think that the fact that Mercy deeded the place to his wife, the complainant, after defendant claims he had given it to her, tends to refute her claim. This deed was recorded five or six months before his death; and while defendant may have had no actual knowledge of it, she does admit that soon after he went to live with complainant someone placed a for sale sign on the property; yet she does not claim to have made any protest about this to James Mercy, as she would doubtless have done if she had then been claiming the property. Another circumstance against her credibility was her attempt to bolster her claim by her unreasonable story that James Mercy had a post-mortem conversation with her confirming her claim. Cf. McElroy v. State, 146 Tenn., 442, 447, 448, 242 S. W., 883.

█ Upon defendant's own showing she had no adverse possession of the house. She admitted that James Mercy himself lived in the house for nearly all of the 30 years, during which she claims to have been in adverse possession. In order to claim adversely to him, it would have been necessary for her to have disseized him and ousted his possession; for where two persons jointly occupy land, one having the legal title and the other not, the occupancy and possession inures to the benefit of the owner of the legal title. Fancher v. De Montegre, 38 Tenn. (1 Head), 40; Ramsey v. Quillen, 73 Tenn. (5 Lea), 184, 192; Welcker v. Staples, 88 Tenn., 49, 12 S. W., 340, 17 Am. St. Rep., 869; Smith v. Cross, 125 Tenn., 159, 140 S. W., 1060; Brier Hill Colliers v. Pile, 4 Tenn. App., 468, 485, 486; Jenkins v. Jenkins, 11 Tenn. App., 142; Sipes v. Sanders, 17 Tenn. App., 162, 170, 66 S. W. (2d), 261; Harrison v. Beaty, 24 Tenn. App., 13, 18, 137 S. W. (2d), 946, 949.

██ Nor do we think there is any showing that defendant held or claimed the property adversely to James Mercy after he left her in the house and went to live at another place with complainant. The presumption is that one who comes into property in subordination to the title of the true owner continues to hold in such subordination; and, where he relies on adverse possession, the burden is upon him to prove by clear and satisfactory evidence not only the adverse char-

acter of his holding but also that the owner had knowledge of such adverse holding.  O'Brien v. Waggoner, 20 Tenn. App., 145, 155, 96 S. W. (2d), 170, 175, and cases there cited; Harrison v. Beaty, 24 Tenn. App., 13, 18, 19, 137 S. W. (2d), 946, 949, 950, and cases cited; Stockton v. Murray (Tenn. App.), 157 S. W. (2d), 859, 863. We think the extent of defendant's proof was that, when James Mercy married and went to live with complainant, he merely permitted defendant to remain in the house by reason of the past family relationship.  We find no satisfactory proof that she ever thereafter gave him any knowledge that she was claiming the property adversely to him.

We think there is no merit in defendant's insistence that there was no sufficient proof of delivery of complainant's deed.  As held by the chancellor, defendant's answer and cross bill did not make this issue.  It admitted that "such a deed does appear to be of record," but alleged that "James Mercy was at the time mentally incompetent to make a deed; never knew that he had made any such deed; and never acknowledged it with any clear vision of what he was doing."  Defendant offered no evidence to support this allegation. But, treating the point as having been made an issue by the pleadings, we think there was sufficient proof of the execution and delivery of the deed.  As we have seen, complainant produced this deed, and her witness, Walter S. Walter, identified it as the deed he had written at the request of James Mercy and left with him, with instructions to acknowledge it before a notary.  Without objection, the original deed was put in evidence and is sent up.  It appears to have been signed and properly acknowledged by James Mercy before W. D. Hawkins, Jr., a notary public of Davidson County, and was recorded the next day.  It is a reasonable inference that the deed was recorded by the direction either of the grantor or the grantee.  In either case, under the circumstances here appearing, this would constitute sufficient proof of the execution and delivery of the deed.  Davis v. Garrett, 91 Tenn., 147, 18 S. W., 113; Scott v. Union & Planters' Bank & Trust Co., 123 Tenn., 258, 276, 130 S. W., 757; Battle v. Claiborne, 133 Tenn., 286, 306, 307, 180 S. W., 584.

Defendant's attack upon the deed as champertous is also without merit.  Our finding, above set forth, that defendant was not in adverse possession of the land, necessitates the conclusion that the deed was not champertous.  A conveyance of land is not champertous unless the land is adversely held.  Gernt v. Floyd, 131 Tenn., 119, 174 S. W., 267; Ferguson v. Prince, 136 Tenn., 543, 548, 190 S. W., 548.

We also think defendant's claim for improvements was properly denied.  There was nothing to support this claim except defendant's own testimony, and the whole of it as to this matter was as follows:

"James Mercy and Mother and I moved into this lot and house soon after he bought it in 1888. He paid for it in instalments and was a long time paying for it. I worked at Mr. Burton's and made money. Very often when my father had not the money to pay on the lot and for taxes, my mother and I borrowed the money and worked for money and let my father have it to pay on the place and for taxes. In this way I am sure I worked and paid as much as perhaps $50.00 or $75.00. My father loved me. I served him faithfully in every way.

". . . While my mother lived she helped me, and I served her and him, and we paid taxes, repairs, upkeep of the place. And after her death I so continued. I paid taxes, and made improvements and repairs on the house, costing me for taxes about $100.00 and for repairs, putting on 2 new roofs, in the course of years, over $200.00. I secured and paid for the furnishings of the house, I cooked, washed and ironed and saw that my father had good bed, clean clothes and food.

". . . of course I wouldn't charge my father board nor ask him to pay me for all I have done to pay and keep up the place; but if Katie is to be allowed to take it from me—then it seems to me I should be allowed to get back out of the place what I have put in it—believing it was mine; and also pay for services I rendered my father there for over 20 years after I was grown, which I might not have done had I supposed he or some one by his word would take away my home. What I did for him would have cost him over $1000.00; and had he not been so good to me, I might not have done it."

If she rendered such "services" to her father, she could not recover therefor either against his estate or the property because such services are presumed to have been rendered gratuitously from motives of kindness and the family relationship. First National Bank of Sparta v. Hunter, 22 Tenn. App., 626, 635, 125 S. W. (2d), 183, 188, and cases there cited. She produced no tax receipts for any taxes paid by her on the property; and the only evidence of such payment was her unsupported statement, which in one instance was that she had furnished her father "as much as perhaps $50.00 or $75.00" for taxes and payments on the place, and in another instance that she had paid "for taxes about $100." This, we think, was too vague, uncertain, and unreliable to form the basis of any relief, especially when it is considered with the other circumstances affecting her credibility. So far as the other item, "over $200," is concerned, it appears to have been merely for the repairs and upkeep of the property against ordinary wear and tear "through the course of years," over 30 years while she was living in the house as a member of the family of James Mercy. Assuming that she paid this, there is nothing to show how much it permanently enhanced the value of the property. Code, sec. 9157 provides:

"Persons holding possession in good faith, under color of title, are entitled to have the value of their permanent improvements set off against the rents and profits which the plaintiff may recover. (1813, ch. 24; 1827, ch. 46.)"

And the doctrine of equity is that one who is in possession of real estate under a bona fide claim of title and who makes permanent improvements thereon is entitled to compensation for such improvements to the extent that they permanently enhance the value of the land, the rents and profits being deducted from the value of such enhancement. Mathews v. Davis, 25 Tenn. (6 Humph.), 324; Masson v. Swan, 53 Tenn. (6 Heisk.), 450, 451; Wilson v. Scruggs, 75 Tenn. (7 Lea), 635; Howard v. Massengale, 81 Tenn. (13 Lea), 577; Graham v. Weaver, 97 Tenn., 485, 37 S. W., 221. As we have seen above, defendant was not in possession of the land, but was merely permitted to live in the house as a member of the decedent's family, during the period when she claims to have made these expenditures. No charge was made against her for use and occupation or for rents and profits. For these reasons we think the chancellor properly declined to allow her a lien on the property for these alleged expenditures.

All of the assignments of error are overruled. The decree of the chancellor is affirmed, and the defendant and appellant, Della Miller, wil pay the costs of this appeal.

Crownover, P. J., and Howell, J., concur.